Skrivanos v. USA                    CV-98-490-JD   12/17/98

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

<u>Theodore Skrivanos</u>

   v.                                    Civil No. 98-490-JD

<u>United States of America</u>

**REPORT AND RECOMMENDATION**

Before me for review pursuant to 28 U.S.C. § 636(b)(1)(B) is a petition for writ of error <u>coram</u> <u>nobis</u> (document no. 1), pursuant to 28 U.S.C. § 1651, that seeks to vacate petitioner's judgment and sentence (which has been fully performed) on the basis of ineffective assistance of counsel. Specifically, petitioner alleges that counsel in the criminal proceedings failed to advise him that by pleading guilty, he could become subject to deportation. The government contends that the writ is not available to petitioner, and that counsel's failure to advise of deportation consequences does not constitute ineffective assistance. For the reasons provided below, the petition should be denied.

**Background**

The facts alleged by petitioner are undisputed. Petitioner, a Canadian citizen, resides in Massachusetts as a permanent resident alien. He has lived in the United States since he was ten (10) months old.

Petitioner, represented by counsel, entered a plea of guilty to a charge of conspiracy to possess with intent to distribute a controlled substance. In his plea agreement he agreed to accept responsibility for distribution of between ten (10) and forty (40) kilograms of marijuana.

The Presentence Investigation Report, which was available to defense counsel, specifically identifies petitioner's citizenship as Canadian. Petitioner and his criminal defense counsel, in separate affidavits, confirm that counsel never advised him of the potential deportation consequences of his plea.

Petitioner states that prior to his plea he believed he could successfully defend the case but was influenced into entering a plea by his attorney. His present counsel maintains that the Government's case was weak. In paragraph 5 of the Plea Agreement, Ex. A to Response to Gov't Opp. to Writ (document no. 11), however, petitioner acknowledged that he was pleading guilty, freely and voluntarily, because of his guilt.

Petitioner was sentenced to three (3) years probation, two hundred (200) hours of community service and six (6) months home detention. After successful completion of his sentence, petitioner was served with a notice of deportation proceedings.

## Discussion

The power to grant coram nobis relief emanates from the All

2

Writs Act, 28 U.S.C. § 1651(a).  See United States v. Morgan, 346 U.S. 502, 511 (1954).[1]  Coram nobis relief is available when the petitioner is no longer in custody for the applicable conviction. See United States v. Camacho-Bordes, 94 F.3d 1168, 1173 n.6 (8th Cir. 1996).

The writ of error coram nobis is used "to set aside a criminal judgment of conviction only 'under circumstances compelling such action to achieve justice.'"  Hager v. United States, 993 F.2d 4, 5 (1st Cir. 1993) (quoting Morgan, 346 U.S. at 511).  Before such relief may be granted, a petitioner who has entered a plea of guilty must provide:

> [1.] an explanation of why [the] petitioner did not earlier seek relief from the judgment;
>
> [2.] a showing that the petitioner continues to suffer significant collateral consequences from the judgment; and
>
> [3.] a demonstration that an error of "the most fundamental character," relevant to the plea decision, occurred.

Hager, 993 F.2d at 5 (citations omitted).

This case may be decided exclusively by reference to the

---

[1]As a technical matter, the writ is available through a motion in the underlying criminal case, and not through a petition initiating a separate civil case.  See Morgan, 346 U.S. at 505-06 n.4; cf. Fed. R. Civ. P. 60(b) (abolishing writ of error coram nobis in civil cases).  The "motion is of the same general character as one under 28 U.S.C. § 2255."  Morgan, 346 U.S. at 506 n.4.

third requirement, whether a fundamental error has occurred. Petitioner contends that he was denied effective assistance of counsel because criminal defense counsel did not advise him regarding the possibility of deportation as a result of his plea of guilty to the drug charge.

A claim of ineffective assistance of counsel in connection with a guilty plea is evaluated under a two-part standard. See Hill v. Lockhart, 474 U.S. 52, 57 (1985). The petitioner must show that "'counsel's representation fell below an objective standard of reasonableness,'" id. (citation omitted), and that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," id. at 59.

As to the first prong of the two-part test, while defense counsel may have had a duty to inform his or her client regarding the "direct" consequences of a guilty plea, cf. Brady v. United States, 397 U.S. 742, 755 (accused must be "'fully aware of the direct consequences'" of plea of guilty), deportation is a collateral consequence, not a direct consequence, see Nuñez Cordero v. United States, 533 F.2d 723, 726 (1st Cir. 1976); accord United States v. Quin, 836 F.2d 654, 655 (1st Cir. 1987); Durant v. United States, 410 F.2d 689, 692 (1st Cir. 1969) ("matters [such] as loss of passport, deportation, loss of voting

4

privileges and undesirable discharge from the armed services, all of which may result from a plea of guilty," are "collateral consequences, civil in nature," in contrast with, for example "parole [which] goes directly to the length of time a defendant is to be incarcerated").

> The circuits that have addressed the issue of failure of counsel to inform an accused of the likely deportation consequences arising out of a guilty plea have all held that deportation is a collateral consequence of the criminal proceeding and therefore the failure to advise does not amount to ineffective assistance of counsel.

Varela v. Kaiser, 976 F.2d 1357, 1358 (10th Cir. 1992) (joining Second, Fourth, Fifth, Seventh, and Eleventh Circuits in holding that failure to inform petitioner of possibility of deportation does not establish ineffective assistance), cert. denied, 507 U.S. 1039 (1993). Accord United States v. Banda, 1 F.3d 354, 356 (5th Cir. 1993); United States v. Del Rosario, 902 F.2d 55, 58-59 (D.C. Cir. 1990).[2]

The Eleventh Circuit, in explaining its holding that the failure to advise of the possibility of deportation is not

---

[2]While there is no contrary precedent in the federal appellate courts, the States have not been as consistent. See generally Gregory D. Sarno, Ineffective Assistance of Counsel: Misrepresentation, or Failure to Advise, of Immigration Consequences of Guilty Plea – State Cases, 65 A.L.R.4th 719 (1989); Gregory D. Sarno, Ineffective Assistance of Counsel: Misrepresentation, or Failure to Advise, of Immigration Consequences of Guilty Plea – Federal Cases, 90 A.L.R. Fed. 748 (1988).

ineffective assistance of counsel, stated the following:

> Deportation is admittedly a harsh consequence of a guilty plea, but so are many other collateral consequences. While we sympathize with [petitioner's] plight, we do not find deportation so unique as to warrant an exception to the general rule that a defendant need not be advised of the deportation consequences of a guilty plea. . . . It is highly desirable that both state and federal counsel develop the practice of advising defendants of the collateral consequences of pleading guilty; what is desirable is not the issue before us.

United States v. Campbell, 778 F.2d 764, 769 (11th Cir. 1985) (citations and footnote omitted). Accord Del Rosario, 902 F.2d at 59.[3]

The First Circuit reached a similar conclusion in deciding that the district court had no duty to permit the withdrawal of a guilty plea if the court failed to inform defendant of the possibility of deportation. See Nuñez Cordero, 533 F.2d at 726

---

[3]The apparent justification for the collateral consequence doctrine is that there are simply too many collateral consequences for all such consequences to be described to a client:

> Pleading guilty to a crime, especially a felony, carries with it a host of consequences beyond the mere jail time, from social opprobrium to the loss of the right to vote. The criminal defense practitioner cannot be expected, say these courts, to be knowledgeable about and advise his client of all the potential consequences of the guilty plea.

F. Scott Pfeiffer, Does Failure to Advise Clients of Immigration Consequences of Guilty Pleas Constitute - Malpractice?, S.C. Law. 32, at 39 (Sept./Oct. 1997).

("While deportation may have a serious effect on a defendant's life, we are not disposed to treat deportation differently from all the other collateral consequences of conviction of which a defendant may learn." (citation omitted)).

While <u>Nuñez Cordero</u> did not close the door on petitioner's claim, since it noted that defense counsel is in a better position than the trial court to ascertain which collateral consequences might be triggered as to a particular defendant, <u>see id.</u> at 726, a subsequent First Circuit decision all but slammed the door shut. In <u>United States v. Quin</u>, 836 F.2d 654 (1st Cir. 1991), the court considered whether counsel's failure to advise his client regarding the deportation consequences of a conviction, prior to the client's waiver of a jury trial and the submission of stipulated evidence to the trial court, constituted constitutionally ineffective assistance of counsel. <u>See id.</u> at 655. The court upheld the trial court's ruling that, since counsel had no explanation for how the consequences of a guilty finding could have had any bearing on the choice between a jury trial and a bench trial, the claim of ineffective assistance was palpably unreasonable. <u>See id.</u> at 655-56. In the course of reaching that conclusion, the court noted, in passing, "the fact that deportation in this context is generally regarded as a collateral consequence, only, viz., legally irrelevant, even as

7

to an outright guilty plea." Id. at 655. This statement indicates that the First Circuit is likely to follow the uniform rule in the circuits that counsel's failure to advise of the possibility of deportation is not ineffective assistance.

This case does not present any facts that make it distinguishable from all of the cases that cite the collateral consequences doctrine. There is no suggestion, for example, that defense counsel affirmatively misled petitioner regarding the possibility of deportation.

Furthermore, while petitioner contends that the Government itself misled him and breached the Plea Agreement by failing to include deportation in the list of collateral consequences in the Plea Agreement, this argument is fruitless since the paragraph expressly indicates that the list is not exclusive: "defendant understands that he will be adjudicated guilty . . . and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms." Plea Agreement ¶ 7 (emphasis added). In addition, in paragraph 6 of the Plea Agreement, petitioner acknowledged that no representations were made to him with respect to any "civil or administrative consequences" that may result from this plea, "because such matters are solely within the discretion of the specific

8

administrative or governmental entity involved."

There is, indeed, no suggestion in the record that any person involved in the case – besides petitioner himself – was aware of petitioner's citizenship before the execution of the Plea Agreement in February 1994.[4]  The only document in the record that refers to petitioner's citizenship is the Presentence Investigation Report, Ex. B to Response of Petitioner to Gov't Opp. (document no. 11), which was prepared in April 1994 by a probation officer.  This document was distributed to defense counsel, the prosecution, and the court (in accordance with the Plea Agreement) prior to sentencing, months after the Plea Agreement was executed.  Thus, despite petitioner's argument to the contrary, there is no basis for voiding the Plea Agreement based on any alleged breach by the Government.

Finding no basis for distinguishing this case from the federal cases on this issue, I conclude that petitioner's claim of ineffective assistance of counsel fails on the first prong of the inquiry in Hill:  criminal defense counsel's failure to advise him regarding the possible deportation consequences of his

---

[4]Criminal defense counsel has stated in a declaration in support of the petition that Mr. Skrivanos is an "English Speaking Caucasian," that counsel was not aware that he was not a United States citizen, that he never discussed the possibility of deportation with petitioner, the Government, probation, or the court.  Ex. A to Petition for Writ (document no. 1).

9

guilty plea was not an error falling below the objective standard of reasonableness. I reach this result despite dissatisfaction with the justification for the collateral consequences doctrine and its potential consequences in this case, given petitioner's almost life-long residency in the United States, minimal role in the conspiracy, successful completion of his sentence, and apparently successful efforts to put his record behind him.

## Conclusion

For the foregoing reasons, I recommend that the petition for writ of error <u>coram</u> <u>nobis</u> be denied. No hearing on the petition is necessary. The hearing scheduled for January 20, 1999 shall be removed from the calendar, pending further Order of the court.

Any objections to this Report and Recommendation must be filed within ten days of receipt of this notice. Failure to file an objection within the specified time waives the right to appeal the district court's order. <u>See</u> <u>Unauthorized Practice of Law Committee v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date: December 17, 1998
cc:  Jean Weld, Esq.
     Scott F. Gleason, Esq.

10