**UNITED STATES of America**

v.

**Hector Bienvenido NUÑEZ CORDERO.**

**Crim. No. 75–60.**

United States District Court,
D. Puerto Rico.

Aug. 28, 1975.

584

Otto J. Riefkohl, II, Asst. U. S. Atty., San Juan, P. R., for plaintiff.

Carlos Pérez Olivo, Hato Rey, P. R., for defendant.

MEMORANDUM OPINION
AND ORDER

PESQUERA, District Judge.

Defendant, Héctor Bienvenido Núñez Cordero, was initially charged with a violation of 21 U.S.C. § 841(a)(1) and 846 for alleged possession with intent to distribute cocaine, a Schedule II Controlled Substance. As a result of the preliminary hearing held before the U. S. Magistrate on March 11, 1975, said charges were dismissed. Defendant was then indicted by the Grand Jury with conspiring to import cocaine into the United States from the Dominican Republic in violation of 21 U.S.C. §§ 952(a) and 963. On May 9, 1975 he entered a plea of guilty to this charge.

Before sentencing, the preparation of a presentence report was ordered and the Court met with his attorney in chambers to review said presentence report and the various sentencing alternatives. On appearing in Court, defendant moved to withdraw his guilty plea. When asked to give his reasons, he advanced that "I pleaded guilty that day,

counting on a probation because I am a working man. I have three children . . . ." He added that his attorney had read to him the transcript of the preliminary hearing held when he stood charged with a violation of 21 U.S.C. §§ 841(a)(1) and 846 (possession with intent to distribute) and that his attorney was of the opinion, after having read said transcript, that he was not guilty, that they should go to trial and that he should withdraw his guilty plea. His attorney interjected that the sentencing day had been advanced, that it was not until the day before that he had received the transcript of the preliminary hearing and that he was convinced he had made a mistake when advising defendant to plead guilty (see Transcript of Proceedings May 23, 1975).

In his motion to withdraw defendant's guilty plea, filed at the moment the case was called for sentencing, defendant's attorney added that " . . . the defendant was advised that if he was sentence (sic) to jail for more than one year he would be deported to Santo Domingo. This he did not know at the time be (sic) pleaded guilty". In an affidavit filed in support of his motion, defendant states that "I did not know at the time I pleaded guilty that I could be deported if the sentence is for more than one year. I was not aware of the consequences of pleading guilty".

The Court granted defendant's counsel the opportunity to file a brief in support of his motion. In said brief, defendant puts forth the theory that he cannot be found guilty of the offense charged since he was not a part to the alleged transaction carried out in the Dominican Republic, that he only acted as an agent for the purported buyer and not for the seller, as shown by the fact that he would not benefit from said transaction. Counsel further charged, only to withdraw later by motion filed on July 18, 1975, that there had been a plea bargain to which the government had defaulted.

On July 21, 1975, another attorney substituted defendant's counsel and he promptly filed an additional memoran-dum in support of defendant's motion. The main thrust of this additional memorandum is that since defendant's motion was made *before* sentencing, "it should be allowed liberally and almost as a matter of course" since the test is not whether such motion should be granted to correct a manifest injustice, but rather whether there exists any fair or just reason to permit the withdrawal of the guilty plea.

In support of the fair and just reason test which is advanced, counsel charges that defendant was not fully aware of the charges against him and of the consequences of his plea. Defendant further alleges he had been advised by his previous attorney that he had been promised that he would be left on probation. Finally, the additional memorandum dwells on the alleged improbability of defendant being found guilty by a jury.

**[1]** Withdrawal of a plea of guilty is permitted under Rule 32(d) of the Federal Rules of Criminal Procedure but it is not an absolute right. *U. S. v. McCoy,* 5 Cir., 477 F.2d 550. Such a motion is addressed to the sound discretion of the Court. The transcript of the proceedings held on May 9, 1975, when defendant entered his plea of guilty, reveals that defendant's plea was intelligently and voluntarily made with assistance of counsel and the admission in open court of all the essential elements of the imputed offense.

The requirements of Rule 11 of the Federal Rules of Criminal Procedure that a plea must be voluntary with understanding of the nature of the charge and the consequences of the plea, are met when as in this case, the Court is satisfied that the defendant understands the direct consequences of his plea. As stated in *U. S. v. Sambro,* 147 U.S.App.D.C. 75, 454 F.2d 918 at 920, "The trial court is not required later on motion to withdraw the plea to consider possible ancillary or consequential results which are peculiar to the individual and which may flow from a conviction on a plea of guilty, although of course such

consequences, if known, might be evaluated by the trial judge in assessing punishment".

Defendant's claim that he was not fully aware of the charges against him is belied by the history of the case, the transcript of the proceedings held on May 9, 1975 and by manifestations of his own counsel. Defendant certainly must have become aware of the charges made against him when after hearing the testimony of the government's witness during the preliminary hearing with reference to the initial charges brought against him, the same were dismissed and he was then indicted for the offense to which he pleaded guilty. Furthermore, prior to permitting him to change his plea and enter one of guilty, the Court thoroughly examined him as to whether his new plea was a free and voluntary act, whether he understood the nature of the crime with which he was charged, and whether he was guilty of such charge. His own counsel admits that in this specific case, the judge "fully and extensively" advised defendant.

■ We are well aware that Rule 32(d) imposes no limitations upon the withdrawal of a guilty plea *before* sentence is imposed and that such leave is to be allowed if any reason for the granting of such privilege is fair and just (*Kadwell v. U. S.,* 9 Cir., 315 F.2d 667); and further that when a defendant seeks to withdraw his plea of guilty on the ground that he has a defense to the charge, the trial judge should not consider the merits of the alleged defense (*Gearhart v. U. S.,* 106 U.S.App.D.C. 270, 272 F.2d 499). However, we are faced here with a request to withdraw a guilty plea which, although made before sentencing, was made after the sentencing alternatives had been discussed with his attorney, and in which the grounds of his belated allegation that he has a meritorious defense, is heavily relied upon. Therefore, without entering on the merits of the defendant's alleged innocence, we touch on the reasons advanced by him urging the merits of his defense, to

hold that under the charge of conspiracy made against defendant, the government is not under the obligation to establish that the defendant took part in the abortive sale of cocaine in the Dominican Republic or that he was to be paid anything for his part in the alleged conspiracy. The only other argument advanced, that defendant was acting as an agent for the buyer rather than for the seller, is entirely pretentious and totally devoid of merits.

■ We must now touch upon the alleged conduct of defendant's counsel. He intended to excuse his prior recommendation in favor of entering a guilty plea on the ground that he got the transcript of the preliminary hearing only one day before the hearing for sentencing. We give no weight to this since counsel was present and fully participated in such preliminary hearing.

■ Upon dismissing his first attorney, defendant claims he was misled by his representations that a prison sentence would not be imposed. We find that this was not so. The transcript of the proceedings on May 9, 1975 shows that the Court investigated whether anyone, including his attorney, had made him any kind of promise.

"THE COURT: Have any promises been made to induce you to plead guilty?

THE DEFENDANT: No.

THE COURT: Has anyone told you you were going to get probation?

THE DEFENDANT: No.

THE COURT: Do you have any ideas about probation?

THE DEFENDANT: More or less, yes.

THE COURT: What idea do you have?

THE DEFENDANT: Well, that since I don't have a bad record I can get a probation.

THE COURT: You hope to get it?

THE DEFENDANT: I hope, yes.

THE COURT: To which Virgin do you pray?

THE DEFENDANT: To the Virgin of Altagracia.

THE COURT: Tell me, do you believe that there is any understanding as to the sentence that you will receive?

"MR. RIOS: In that respect, Your Honor, I believe that in plea bargaining between brother counsel and Mr. Riefkohl I believe they agreed if the defendant were to plead guilty the Government would recommend leniency, but aside from that recommendation of leniency I believe there is no understanding between the defendant and the Government.

THE COURT: Mr. Nuñez Cordero, do you believe there is any understanding as to the sentence you will receive?

THE DEFENDANT: No, I don't think there is any agreement.

THE COURT: Have any predictions been made to you as to the sentence you will receive?

THE DEFENDANT: They have explained to me more or less.

THE COURT: So predictions have been made to you?

THE DEFENDANT: Everything has been explained to me, the maximum and minimum, and I hope I get the minimum.

THE COURT: Of course you do. The question is, if anyone told you, 'Don't worry, you are only going to get this much?'

THE DEFENDANT: No.

THE COURT: Have you asked your attorney how much he thinks you are going to get?

THE DEFENDANT: I have asked him, but he does not know how much."

Furthermore, he was advised that even any recommendation that could be made at the time of sentencing him was in no way binding on the sentencing judge.

"THE COURT: One more piece of advice to you. At the time of sentencing you, if I accept your plea, I will ask if anyone has made any promises to you with respect to recommending a sentence, and if so, what did that consist of. The fact that I make inquiries about this does not mean that this Court is under the obligation to accept such recommendation if any is made, or that you, the defendant, will have any complaint if the Court does not follow any recommendation.

THE DEFENDANT: Yes, sir."

In summary, the facts show that defendant not only pleaded guilty voluntarily, but that he testified as to such guilt being fully aware of the potential consequences and with the knowledge of his counsel. Both counsel and defendant were under no misapprehension as to the facts of the alleged conspiracy. In fact, they had already heard the testimony of the government's agent.

For the reasons advanced, defendant's motion for leave to withdraw his plea of guilty is hereby denied as we do not see that he has been unfairly or unjustly treated nor that the interest of justice would be best served by reopening the case for trial. We are convinced that defendant seeks to withdraw his plea of guilty only because of disappointment over the fact that he may not be left on probation.

It is further ordered that defendant is to appear before the Court on September —5—, 1975 at 9:00 a. m. for sentencing.