Hector Bienvenido NUNEZ CORDERO, Defendant-Appellant,

v.

UNITED STATES of America, Appellee.

No. 75–1401.

United States Court of Appeals, First Circuit.

Argued Feb. 3, 1976.

Decided April 16, 1976.

Carlos Perez Olivo, San Juan, P.R., for defendant-appellant.

Mervyn Hamburg, Atty., Dept. of Justice, Washington, D.C., with whom Julio Morales-Sanchez, U.S. Atty., San Juan, P.R., was on brief, for appellee.

Before COFFIN, Chief Judge, MATTHES* and McENTEE, Circuit Judges.

COFFIN, Chief Judge.

The sole issue in this case is whether the district court abused its discretion in refusing to permit appellant to withdraw his plea of guilty before sentence was imposed.

Appellant, a 37 year old citizen of the Dominican Republic, was originally charged under 21 U.S.C. § 841(a)(1) and § 846 with possession with intent to distribute cocaine. On March 11, 1975, a preliminary hearing was held in which a government agent testified that appellant had introduced him in San Juan, Puerto Rico, to a potential seller, Florenzan, from the Dominican Republic; and that appellant met him in Santo Domingo, tried to arrange a meeting with his associates, and, having to return to Puerto Rico, on February 28 introduced him to a cousin to continue to serve as liaison. The agent further testified that Florenzan finally arrived with a sample and said the price would be $22,000 a kilo. The agent tried to obtain a reduction but Florenzan said he had to pay the couriers who had brought it from Columbia and also that part of the money was for appellant. The deal was made, the cocaine soon delivered, and Florenzan arrested.

At the end of the preliminary hearing, the charge of possession with intent to distribute was dismissed, but a grand jury immediately indicted appellant for conspiracy to import. 21 U.S.C. § 952(a) and § 963. Some time after arraignment, appellant, with retained counsel, appeared before the court on May 9 to change his plea to one of guilty. There then ensued an extensive colloquy between appellant and the court in which appellant first took the position that the only act he had committed was to give an address to someone who had wanted to buy cocaine and that he gained no benefit from the transaction. The court understandably refused to accept the plea. Appellant, however, showed that he understood the conspiracy charge made against him, and, on the third discussion of the issue of his guilt, acknowledged that he had established the contact between the buyer and Florenzan so that the sale could be made. He denied that he was pleading guilty for any other reason than that "I am pleading guilty because that's conspiring". He was aware of the maximum penalties, including the mandatory special parole term, and assured the court that no threats, predictions, or promises had been made except that the government would recommend leniency.

Two weeks later, on May 23, the case was called for imposition of sentence. The court and counsel discussed appellant's pre-

sentence report in chambers. Appellant then filed a motion to withdraw his guilty plea (apparently prepared a day earlier), alleging (1) that the transcript of the preliminary hearing, received the day before, revealed no commission of any federal offense, and (2) that appellant had not earlier known that deportation would follow any jail sentence of more than one year. In the course of questions posed by the court, appellant said that he had earlier pleaded guilty because he had counted on probation; that when his attorney had read the transcript of the preliminary hearing, he told appellant that he was not guilty. Appellant's attorney, who had attended that hearing, stated that in reading the transcript, he discovered that the government witness' testimony revealed no offenses against the United States. The court deferred judgment, inviting memoranda.

■ On July 9, appellant filed a statement purportedly made by the supplier Florenzan, now a co-defendant, and apparently a fugitive in Santo Domingo, saying that appellant had at no time received any compensation and had participated only as a friend. Appellant also sought to have his passport presented to the court, which he averred would show that he had left the Dominican Republic on February 27. On July 21, new counsel appeared for appellant and filed an additional brief, urging that a motion to withdraw a guilty plea before sentencing "should be allowed liberally and almost as a matter of course". On August 28, the court issued its opinion. It recognized that leave to withdraw before sentence should be granted if fair and just reason exists. Noting its obligation not to pass on the merits of any defense, the court was obviously unimpressed by the argument of counsel based on his reading of the transcript of the preliminary hearing. It reviewed the extensive colloquy at the hearing on change of plea, which gave no basis for appellant's having been mislead about probation. It saw no obligation to have advised appellant of such indirect consequences of a guilty plea as deportation, citing *United States v. Sambro*, 147 U.S. App.D.C. 75, 454 F.2d 918 (1974). It denied leave to withdraw the plea. *United States v. Nunez Cordero*, 405 F.Supp. 583 (D.P.R. 1975).

■ The standard guiding the trial court in deciding a motion to withdraw a plea of guilty before sentence is simply whether or not "fair and just" reason has been advanced, see *Kercheval v. United States*, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009, 1012 (1927). It should be liberally allowed. The standard guiding the reviewing court is whether the district court has abused its discretion, see e.g., *United States v. Barker*, 514 F.2d 208, 220 (D.C. Cir. 1975), as to which an appellant carries the burden. *United States v. Webster*, 468 F.2d 769 (9th Cir. 1972); *United States v. Lombardozzi*, 436 F.2d 878 (2d Cir. 1971).

This case posed a close question below because of the absence of two factors—any clear indication that appellant had delayed his motion until he had had an opportunity "to test the weight of potential punishment", *Kadwell v. United States*, 315 F.2d 667, 670 (9th Cir. 1963), and any showing that the government had been prejudiced by reliance on appellant's earlier plea. *United States v. Tabory*, 462 F.2d 352 (4th Cir. 1972); *United States v. Vasquez-Velasco*, 471 F.2d 294 (9th Cir. 1973). There exists the possibility of some game playing by appellant, since his motion to withdraw was apparently not formally filed until after court and counsel had discussed the presentence report and sentencing alternates. But the motion was dated and avowedly served a day earlier. As to prejudice, the government has made no showing that a trial would have been made less convenient by reason of the two week delay between the plea and the motion to withdraw.

While *Kadwell, supra*, is strongly relied upon by appellant as advocating presentence withdrawal "almost as a matter of course", that case was an easy one. The Rule 11 proceeding was vulnerable and the defendant had consulted only briefly with appointed counsel who had just been selected from those in the courtroom.

In this case the court's inquiries in the Rule 11 proceeding[1] were complete and clear. *United States v. Fernandez*, 428 F.2d 578 (2d Cir. 1970). The motion to withdraw was not made so soon after the plea as to indicate that the latter was made in haste, *see United States v. Barker, supra* at 222, but after a period of two weeks. Counsel had been present at both the preliminary hearing and at the hearing on change of plea. *Cf. Kadwell, supra.* And nothing had been represented to the court which would indicate that a conviction would be vulnerable to collateral attack. *Cf. United States v. Pisacano*, 459 F.2d 259, 262 (2d Cir. 1972). The legal case against appellant had not, despite counsel's representations, taken on any different complexion. The alleged departure of appellant from the Dominican Republic a day before one of the meetings testified to the government agent was as much known to appellant when he pleaded guilty as it was two weeks later. And the exculpatory statement of appellant's absent and unavailable co-defendant could not be expected to carry weight. As the court said in *Barker, supra*, 514 F.2d at 221, "Were mere assertion of legal innocence always a sufficient condition for withdrawal, withdrawal would effectively be an automatic right. There are few if any criminal cases where the defendant cannot devise some theory or story which, if believed by a jury, would result in his acquittal."

One remaining factor is appellant's delayed realization that, as an alien, his conviction for a narcotics offense would subject him to deportation. 8 U.S.C. § 1251(a)(11). But at least two circuits have held that the prospect of deportation, being one of many possible collateral consequences of a conviction, does not impose a duty on the district court to include it in its Rule 11 litany of the consequences of a plea of guilty. *Fruchtman v. Kenton*, 531 F.2d 946 (9th Cir., 1976), *Michel v. United States*, 507 F.2d 461 (2d Cir. 1974), and one has held that a misunderstanding as to deportation is not sufficient to compel a court to allow withdrawal of a plea before sentence. *United States v. Sambro*, 147 U.S.App.D.C. 75, 454 F.2d 924 (1971).

We have recognized that deportation is a collateral consequence of a guilty plea, differing from such a direct consequence as ineligibility for parole. *Durant v. United States*, 1 Cir., 410 F.2d 689, 692 (1969). This does not completely dispose of the argument that a post-plea realization of mandatory deportation upon conviction should constitute "fair and just" reason for withdrawal. We can readily imagine that a court might be willing to grant leave to withdraw under this circumstance. But we cannot say that a court must grant leave. While deportation may have a serious effect on a defendant's life, *cf. Ng Fung Ho v. White*, 259 U.S. 276, 284, 42 S.Ct. 492, 495, 66 L.Ed. 938, 942 (1922), we are not disposed to treat deportation differently from all the other collateral consequences of conviction of which a defendant may learn. As the court observed in another context in *Michel v. United States, supra*, 507 F.2d at 466, "Defense counsel is in a much better position to ascertain the personal circumstances of his client so as to determine what indirect consequences the guilty plea may trigger."

In sum this was a difficult case for the district court to decide. Its conclusion, after several months' deliberation, that no sufficient reason had been advanced for withdrawing the plea, must stand. We have seen no case where facts similar to these have been held sufficient to find an abuse of discretion. Were we to hold that appellant had met his burden of showing an abuse of discretion, we would in effect be adopting a rule that, absent a showing of prejudice by the government, withdrawals of pleas before sentence should be granted as a matter of course. Such a rule would, we believe, not only overreach existing law but would reduce the significance of a Rule 11 proceeding to a time-consuming exercise,

---

1. Prior to the effective date of December 1, 1975, of most of new amendments to the Rule. P.L. No. 94–64 (Aug. 1, 1975).

automatically reversible before sentence at the option of a defendant.

*Affirmed.*