**UNITED STATES of America, Plaintiff,**

v.

**Jose Ramon COTAL–CRESPO, Ivan Rodriguez–Bocachica and Antonio De Jesús De Jesús, Defendant.**

Crim. No. 93–068 (JP).

United States District Court,
D. Puerto Rico.

March 4, 1994.

**992**

Warren Vázquez, Asst. U.S. Atty., Hato Rey, PR, for plaintiff.

Mariangela Tirado, San Juan, PR, for Cotal–Crespo.

Rachel Brill, San Juan, PR, for Rodriguez–Bocachica.

Asst. Federal Public Defender, Old San Juan, PR, for De Jesus.

### OPINION & ORDER

PIERAS, District Judge.

The Court has before it a joint motion filed by all defendants on January 19, 1994, to withdraw their guilty pleas, or in the alternative, to object to the Presentence Investigation Report (docket No. 77). The government filed a timely opposition on February 23, 1994 (docket No. 84). For the reasons set forth below, defendants' motion to withdraw their guilty pleas is hereby **DENIED**.

### I. BACKGROUND

On February 17, 1993, a Federal Grand Jury returned a three count indictment against the defendants. Count one charged all three defendants of forming a conspiracy with the intent of obtaining possession and distributing multi-kilogram quantities of cocaine. Counts two and three charged defendant José Ramón Cotal Crespo of using the telephone, a communications facility, in furtherance of the commission of a drug trafficking offense. The defendants were arraigned on March 3, 1993, where they entered a plea of not guilty. The Court set a Jury Trial for June 8, 1993.

On the eve of trial the defendants requested a change of plea, which the Court accepted. At the change of plea hearing the government set forth its summary of the evidence in open Court. On June 11, 1993, the government filed a written version of the facts in support of their case. The defendants did not object to the facts as presented by the government either at the hearing or after the government filed its written version. Over two months after the hearing, on August 11, 1993, the defendants filed a joint *pro se* motion requesting the withdrawal of their guilty pleas. The motion alleged that defendants' attorneys had provided an ineffective assistance since the defendants did not understand the nature of the change of plea and its consequences. The motion also stated that the government's version of the facts was inaccurate.

Pursuant to the *pro se* motion, the Court vacated the sentencing hearing set for September 8, 1993, and relieved attorneys Carlos Noriega, Joseph Laws, and José Vázquez Pla of their representation. The Court also provided each of the defendants with new court appointed counsel, as the defendants requested. The Court then instructed new counsel to file any motions on or before January 19, 1994, and that previous motions would not be considered. The defendants filed a new motion to withdraw their guilty pleas on Janu-

ary 19, 1994, and the government filed its opposition on February 23, 1994.

## II. DISCUSSION

### A. *The Withdrawal of a Guilty Plea*

The defendants argue that the Court should allow them to withdraw their guilty pleas because their pleas were made involuntarily. The defendants maintain that their pleas were involuntary because the Court did not inform them of the nature of the charges against them, and because the Court failed to determine with certainty whether they understood and waived their constitutional rights to remain silent, to a jury trial, and to confront witnesses against them. In short, the argument made by the defendants is simple: the Court failed to provide the defendants with the necessary procedures during the change of plea hearing to ensure that their pleas were voluntary. Thus, the argument goes, if the Court did not comply with the procedure, the pleas must have been involuntary. It is certainly one of the ironies of our judicial system that the Court which accepted the guilty pleas, and which accepted them only because it understood that they were made voluntarily and knowingly, must now reexamine its actions to determine if it deprived the defendants of the possibility to make a voluntary plea. Nevertheless, irony is a part of our everyday lives and the Court is ready to embark on this analysis with resolve and an open mind.

■ As the defendants are quick to admit in their memorandum, in order for a guilty plea to be valid it must be made both knowingly and voluntarily. *United States v. Allard*, 926 F.2d 1237, 1244–45 (1st Cir.1991). It is important that a plea be made both knowingly and voluntarily because a guilty plea constitutes a waiver of the right to a jury trial, the right to confront one's accusers, and the privilege against self incrimination. *Parke v. Raley*, —— U.S. ——, ——, 113 S.Ct. 517, 522, 121 L.Ed.2d 391, 403 (1992) ("The standard [for a constitutionally permissible guilty plea] was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant"). Rule 11 of the Federal Rules of Criminal

Procedure directs a Court to ascertain, before it will accept a guilty plea, whether: 1) the plea is free from coercion, 2) whether the accused understands the nature of the charges brought against him, and 3) whether the accused understands the consequences of entering a guilty plea. *See United States v. Dayton*, 604 F.2d 931, 936–37 (5th Cir.1979), *cert denied*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). However, there is no "talismanic test for determining whether the core concerns of Rule 11 have been satisfied." *Allard*, 926 F.2d at 1245. Indeed, when making a determination of whether Rule 11 was satisfied, a Court "should not exalt form over substance but should look to the reality of the situation as opposed to the ritual." *Id.*

■ Pursuant to Rule 32(d) of the Federal Rules of Criminal Procedure a Court may permit the withdrawal of a guilty plea before sentencing only upon a showing of a "fair and just reason." Thus, as the defendants also admitted, there is no absolute right to withdraw a guilty plea. *United States v. Tilley*, 964 F.2d 66, 72 (1st Cir. 1992). In order to determine whether fair and just reasons exist, the First Circuit has provided five different factors which should be evaluated in conjunction:

1) The timing of defendant's change of heart.

2) The force and plausibility of the reason.

3) Whether the defendant has asserted his legal innocence.

4) Whether the parties had reached or breached a plea agreement.

5) Whether the defendant's guilty plea can still be regarded as voluntary, intelligent, and otherwise in conformity with Rule 11 of the Federal Rules of Criminal Procedure in light of the proffered reason and the disclosed circumstances.

*Id.* If the combined weight of the previous factors tilts in the defendant's favor, the Court should then also assess the quantum of prejudice, if any, that the government will suffer. *United States v. Doyle*, 981 F.2d 591, 594 (1992). Otherwise, a guilty plea should

stand. An examination of these factors is in order.

■ 1) *Timing.* When the motion for withdrawal of a guilty plea was filed is important. *Id.* at 595. "While an immediate change of heart may well lend considerable force to a plea withdrawal request, a long interval between the plea and the request often weakens any claim that the plea was entered in confusion or under false pretenses." *Id.* (citations omitted). In the case at bar the defendants filed their pro se motion two months after the hearing, and merely three weeks before sentencing. Two months is a long delay. If the defendants had been really confused they would have made their request much earlier. Indeed, by the time the defendants decided to file their motion, the Presentence Investigation Report was already finished,[1] and sentencing was only a short time away. For example, in *Núñez Cordero v. United States,* 533 F.2d 723, 725 (1st Cir.1976), the First Circuit found that a two week delay in requesting a withdrawal of a guilty plea weighed in favor of finding a voluntary plea. From the available facts it is evident that the defendants did not experience the "swift change of heart" which would indicate that their pleas were entered in "haste and confusion." *See United States v. Ramos,* 810 F.2d 308, 312 (1st Cir.1987).

2) *Reason.* The issue of timing is of course linked to the second factor to consider: the proffered reason given for the withdrawal of the plea. Apart from the technical legal arguments presented about the procedures used during the hearing, the defendants have argued, albeit weakly, that they were under the mistaken impression that the total amount of cocaine charged would be divided among them for sentencing purposes.

The argument is not only weak but unconvincing. When the Assistant United States Attorney gave the Court a summary of the facts he unequivocally stated that Mr. Cotal-Crespo had made two telephone calls which had been recorded, and that all three defendants wanted to buy eight kilograms of cocaine. Change of Plea Hearing Transcript, p. 16 ("Transcript"). When the Court asked the defendants whether they agreed with the facts as stated they all answered in the affirmative. Transcript, p. 18. Once again, after the recital of the facts, the Court asked the defendants how they wanted to plead, to which all defendants answered "guilty." Transcript, pp. 18–19. There is simply no evidence for the Court to think that the defendants were confused about the amount of cocaine which would be considered for sentencing purposes.[2]

Regardless of whether the defendants understood the specific amount of cocaine that they were charged individually, the Court is certain that the defendants understood and were repeatedly told that their individual minimum mandatory sentence was 10 years. The record is more than clear on this point. As the transcript of the hearing reflects, the Court asked every defendant whether they knew what the minimum punishment the law provided for the offense to which they were pleading guilty. To the Court's question each defendant answered that it was from ten years to life. Almost prophetically, after the Court explained to the defendants how the sentencing guidelines work, the Assistant United States Attorney requested that the Court explain to the defendants once again that whatever the sentencing guidelines recommended, the minimum statutory sentence that they could receive for count one was 10 years. Transcript, p. 12. The Court then

---

**1.** The record reflects that the Presentence Investigation Report was finished August 6, 1993, for defendant Rodríguez Bocachica, August 9, 1993, for defendant Cotal Crespo, and August 11, 1993, for defendant De Jesús De Jesús.

**2.** The defendants point out that Attorney Laws, during the change of plea hearing, told the Court that he agreed that the minimum statutory sentence was 10 years, but that at the time of sentencing he would argue to try to convince the Court to reduce it. Transcript, p. 14. Allegedly,

this statement demonstrates that the defendants thought the cocaine would be divided among them for sentencing purposes. This argument is wholly unconvincing and does not merit serious consideration. There could be many reasons why Attorney Laws could have made that remark which would have nothing to do with the alleged misunderstanding that the defendants were pleading guilty to less than 8 kilograms of cocaine. The important fact is that attorney Laws, as all three defendants, understood that the minimum mandatory sentence would be 10 years.

explained again to the defendants that the minimum sentence they would receive would be 10 years, to which the defendants answered in the affirmative. The Court went so far as to ask the defendants again: "[a]nd understanding that you are in agreement of changing your plea at this time?" Transcript, p. 13. The defendants answered in the affirmative. *Id.* Thus, while defendants' argument about a mistake regarding the amount of cocaine could possibly be taken into consideration during sentencing, it certainly does not invalidate a plea which was made knowingly and voluntarily. Apart from the alleged procedural deficiencies, the defendants have not articulated a good reason why the Court should withdraw their pleas.

3) *Innocence.* In its simplest terms, the innocence factor establishes that "the absence of a claim of innocence weighs in favor of allowing a guilty plea to stand." *Doyle,* 981 F.2d at 596. During the Rule 11 hearing all three defendants unequivocally acknowledged their guilt regarding the charged crimes. Specifically, the Court asked each defendant to "tell their story," to which each defendant responded by admitting their guilt and participation in the conspiracy. Defendant's motion to withdraw their pleas does not contain an assertion of innocence. Therefore, defendants' admissions of guilt weigh heavily against granting their motion.

4) *Plea Agreement.* No plea agreement exists in this case.

■ 5) *Compliance with Rule 11.* In order to determine whether the guilty plea was knowing and voluntary it is necessary to examine the circumstances surrounding the change of plea in light of the proffered reason for the withdrawal, which was already explained in section two above. *See Doyle,* 981 F.2d at 596. First, it is important to note that there is no evidence of coercion in this case, and the defendants have alleged none. Second, the defendants understood the nature of the charges brought against them. The Court specifically asked each defendant whether they had read the petition

for a change of plea, whether they had consulted their attorneys with any questions, and whether their answers were truthful. Transcript, p. 4. All defendants answered in the affirmative. *Id.* In the form provided to enter a guilty plea all three defendants explained, in their own words, the acts they had committed for which they were pleading guilty. Later, the Court asked each defendant to "tell their story," at which time every defendant admitted that they had tried to buy drugs with their co-defendants. Transcript, pp. 5–7. Specifically, defendant Cotal–Crespo stated that he had made some phone calls and later gone with the two co-defendants to buy the drugs. Transcript, p. 7. Finally, when the government read its statement of facts the defendants agreed with the statement without any objection or hesitation. The defendants understood perfectly the nature of the charges brought against them, and evidenced this understanding through their statements and conduct.[3]

Third, the Court is also certain that the defendants understood the consequences of entering into a guilty plea. As explained above, the defendants told the Court that they had read the petition to enter a guilty plea and consulted with their attorneys regarding any questions. The Court specifically asked each individual defendant, among other things: (1) whether they understood what was happening at the hearing, Transcript, p. 4; (2) whether they were satisfied with the representation provided by their attorneys, Transcript, p. 5; (3) whether they understood that they had a right to plead not guilty, *Id.;* (4) whether they remembered answering questions about their right to a jury trial, *Id.;* and (5) whether they understood that if they pled guilty they would be found guilty without a trial. *Id.* In addition, as explained before, the Court explained in detail to each defendant the consequences of pleading guilty regarding the sentencing guidelines, the minimum statutory sentence, as well as the fines they would be obliged to pay.

---

**3.** For example, when the Court asked defendant De Jesús if he knew how many years of supervised release he would be subjected to, the defendant had no trouble telling the Court that he did

not know. Transcript, p. 8. After the Court told him that it would be five years the defendant answered affirmatively and evidenced that he understood the Court perfectly.

■ A balancing of the previous factors weighs heavily against finding a just and fair reason to grant defendants' motion to withdraw their guilty pleas. The timing of the complaint, the lack of a strong and believable reason to invalidate the hearing, the lack of innocence, as well as the Court's conviction that the defendants pleaded knowingly and voluntarily to those criminal charges, all point towards denying defendants' motion.[4]

In a last ditch attempt to convince the Court, the defendants try to rely on *United States v. Ruiz Del Valle*, 8 F.3d 98 (1st Cir.1993), a recent First Circuit opinion. The defendants argue that it is the Court's responsibility to ensure that the defendants understand the nature of the charge brought against them. Since the Court did not explain the elements of the offense to each defendant, the defendants maintain that their pleas must be considered involuntarily. The facts in *Ruiz Del Valle* are exceptionally important in understanding the decision. As a matter of fact, the opinion itself makes clear that its "holding is based on the unique facts of th[e] case." *Id.* at 104.

In *Ruiz Del Valle* the defendants had been charged with, among other things, using and carrying a firearm during and in relation to a drug trafficking crime. *Id.* at 99. One of the defendants pled guilty to various counts, including the firearm charge, while the other defendant opted for a bench trial. During the change of plea hearing the charges were not read to the defendant or explained to her by the Court. Also, the statement of facts provided by the government alluded once and only superficially to the firearms charge. Indeed, the facts as presented did not even substantiate the firearms charge. Finally, the defendant herself told the Court that she knew there was a firearm in the house but that she had not bought it or used it. After defendant's statement, the Court did not investigate further and proceeded with the hearing.

The First Circuit found the change of plea hearing defective as to the firearms count because the defendant was not aware of the nature of the charges brought against her. As evidence of the fact that she was not aware of the nature of the firearms charge, the First Circuit pointed out that the charges were not read to her and that she uttered statements which evidenced her lack of understanding. The Court of Appeals understood that defendant's statement about the firearm should have aroused the district court's suspicion. This suspicion should have led the Court to take a closer look at the defendant's knowledge about the nature of the firearm charge brought against her. Thus, the First Circuit allowed the defendant to withdraw her plea as to the firearms count because she had not made a voluntary and knowing plea. However, the defendant was not allowed to withdraw her plea as to the other counts.

The facts in this case are very different. First, the defendants told the Court that they had consulted and understood the petition to file a guilty plea. The government's version of the facts was complete and clear, and the defendants had no objections or statements to make about them. None of the defendants expressed any vacillation or objection during any part of the proceedings which would have indicated to the Court confusion or lack of knowledge. To the contrary, the defendants were completely aware of the circumstances and conditions under which they were pleading guilty.

*Ruiz Del Valle* does not require or mandate that this Court allow the defendants to withdraw their pleas. Indeed, if the fact that a Court did not personally read the charges against a defendant was a fatal mistake under *Ruiz Del Valle*, the First Circuit would not have only invalidated the firearms count;

---

4. As an example of a much more difficult balancing of factors please see *United States v. Serrano*, 622 F.Supp. 517 (D.P.R.1985) (defendant alleged that he was under much stress when he pleaded guilty because, among other things, he had suffered a heart attack, his daughter was sick, he was under medication, he was innocent, he had been drinking, and he was considering taking his own life). Even with the difficult factors presented in this case the Court found that based on its observations of the defendant's demeanor shown during the hearing, as well as the answers provided there, the Court was convinced that the plea had been made both knowingly and voluntarily.

it would have invalidated all counts. In reality, *Ruiz Del Valle* stands for the proposition that Rule 11 and every other First Circuit and Supreme Court case stands for: in order for a guilty plea to be valid it must be made knowingly and voluntarily. The guilty pleas made in this case fulfill these requirements.

The Court satisfied the core concerns of Rule 11 during the change of plea hearing. While it is true that the Court did not specifically ask every defendant if they knew that by pleading guilty they were giving up their constitutional right to confront its accusers and the privilege against incrimination, the defendants voluntarily and knowingly pleaded guilty. Their statements, behavior, and conduct in open court evidenced their understanding. It would be a travesty of justice to allow three defendants who have admitted their guilt to withdraw their pleas because the Court did not spelled out every single constitutional right which criminal defendants enjoy. The injustice would even be greater since the defendants knew very well the consequences of their pleas. To hold otherwise would violate the spirit of Rule 11.

### B. *Evidentiary Hearing*

 The defendants also requested that even if the Court did not allow them to withdraw their pleas, it should "at least" hold an evidentiary hearing on whether they should not be subjected to a ten year mandatory minimum sentence. Judge Selya, of the First Circuit, masterfully explained the reason why evidentiary hearings on motions are the exception rather than the rule: "[c]ourts are busy places." *United States v. McGill,* 11 F.3d 223, 225 (1st Cir.1993). "Even in the criminal context a defendant is not entitled as of right to an evidentiary hearing on a pretrial or post-trial motion." *Id.* A party requesting an evidentiary hearing carries the burden of demonstrating its special need. *Id.* The defendants have utterly failed to demonstrate that such a hearing is necessary. Since the motions filed by the parties and the record in this case are more than sufficient to make the necessary determinations, defendants' petition for an evidentiary hearing is hereby **DENIED.**

### III. CONCLUSION

Defendants' pleas were made both knowingly and voluntarily. There are no fair or just reasons that mandate or even suggest that defendants' pleas should be withdrawn. Indeed, defendants' claims of confusion are probably the result of having had the opportunity to contemplate what they will have to endure in prison for at least 10 years. However, after entering a guilty plea, such reasons will not be enough. "After all, to invalidate a guilty plea a defendant's misimpression must, at the very least, be both objectively reasonable and related to a material matter." *Doyle,* 981 F.2d at 596. Defendants' alleged mistakes certainly do not qualify under either score, and it does not entitle them to an evidentiary hearing. *Id.* Therefore, defendants' motion is hereby **DENIED.**

IT IS SO ORDERED.